IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SIERRA CLUB, et al., | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| UNITED STATES FEDERAL HIGHWAY ADMINISTRATION; JANICE W. BROWN, IN HER OFFICIAL CAPACITY AS DIVISION ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION, TEXAS DIVISION; JEFFREY F. PANIATI, P.E., IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION; UNITED STATES DEPARTMENT OF TRANSPORTATION; RAY LaHOOD, IN HIS OFFICIAL CAPACITY AS SECRETARY OF TRANSPORTATION OF THE UNITED STATES DEPARTMENT OF TRANSPORTATION; TEXAS TRANSPORTATION COMMISSION; AND DEIRDRE DELISI, IN HER OFFICIAL CAPACITY AS CHAIR OF THE TEXAS TRANSPORTATION COMMISSION, | § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:09-cv-00692 |
| *Defendants*. | § | |

**DEFENDANTS' JOINT REPLY TO PLAINTIFFS' COMBINED
RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

                                                                                                    **Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

          A.      Plaintiffs' Motion for Summary Judgment includes extra-record materials that should not be considered in this Administrative Procedure Act proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

          B.      Defendants' alternatives analysis complies with NEPA . . . . . . . . . . . . . . . . . . . . . 2

          C.      The Final Environmental Impact Statement contains a fully compliant discussion of floodplains, drainage and wetlands . . . . . . . . . . . . . . . . . . . . . . . . 4

                  1.      History of the drainage analyses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                  2.      Defendants properly applied the best available floodplain data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          D.      Defendants have adequately considered and reported on the potential impacts due to air pollution and emissions of air toxics . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.     CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**INDEX OF AUTHORITIES**

**Cases**                                                                                          **Page**

*Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87,
  103 S. Ct. 2246 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Border Power Plant Working Group v. Dep't of Energy*,
  260 F. Supp. 2d 997 (S.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Camp v. Pitts*, 411 U.S. 138, 93 S. Ct. 1241 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*City of Shoreacres v. Waterworth*, 332 F. Supp. 2d 992 (S.D. Tex. 2004) . . . . . . . . . . . . . . . . . 7

*Concerned Citizens Coal. v. Fed. Highway Admin.*, 330 F. Supp. 2d 787 (W.D. La. 2004) . . . . . 3

*Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 202 F. Supp. 2d 594
  (W.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fla. Power & Light Co. v. Lorian*, 470 U.S. 729, 105 S. Ct. 1598 (1985) . . . . . . . . . . . . . . . . . 1

*Hughes River Watershed Conservancy v. Johnson*, 165 F.3d 283 (4th Cir. 1999) . . . . . . . . . . . . 6

*Kleppe v. Sierra Club*, 427 U.S. 390, 96 S. Ct. 2718 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Laguna Greenbelt, Inc. v. U.S. Dep't of Transp.*, 42 F.3d 517 (9th Cir. 1994) . . . . . . . . . . . . . . 3

*La. Crawfish Producers Ass'n v. Rowan*, 463 F.3d 352 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . 3

*Lands Council v. Powell*, 395 F.3d 1019, 1032 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 109 S. Ct. 1851 (1989) . . . . . . . . . . . . . 6

*Mid States Coal. for Progress v. Surface Transp. Bd.*, 345 F.3d 520 (8th Cir. 2003) . . . . . . . . . 3

*Nat'l Wildlife Fed'n v. Babbitt*, 128 F. Supp. 2d 1274 (E.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . 7

*Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 1233 (9th Cir. 2005) . . . . . . . . . . . 6, 7

*N.C. Alliance for Transp. Reform, Inc. v. U.S. Dep't of Transp.*,
  151 F. Supp. 2d 661 (M.D. N.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sierra Club v. Fed. Emergency Mgmt. Agency,* Court Advisory, Civil Action
  No. H-07-608 (S.D. Tex. filed Feb. 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sierra Club v. Espy,* 38 F.3d 792 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sierra Club v. U.S. Army Corps of Eng'rs*, 701 F.2d 1011, 1030 (2nd Cir. 1983) . . . . . . . . . . . . 7

*Sierra Club v. U.S. Dep't of Transp.*, 310 F. Supp. 2d 1168, 1202 (D. Nev. 2004) . . . . . . . . . . 12

*Soda Mountain Wilderness Council v. Norton*, 424 F. Supp. 2d 1241 (E.D. Cal. 2006) . . . . . . . . 3

**Constitutional Provisions, Statutes, and Rules**

40 C.F.R. § 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, App. A

40 C.F.R. § 93.114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, App. C

40 C.F.R. §§ 93.150-93.160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, App. B

40 C.F.R. § 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

66 C.F.R. 17229 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

66 F.R. 17230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

42 U.S.C. § 7407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 7409 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 7410 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 7506 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**Other**

Council on Environmental Quality, *Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations*, Question 1, Fed. Reg. 18026, 18027 (1981) . . . . . . . . . . 3

Houston-Galveston Area 2035 RTP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Houston-Galveston Area FY 2008-2010 TIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Appendices**

40 C.F.R. § 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. A

40 C.F.R. §§ 93.150-93.160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. B

40 C.F.R. § 93.114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. C

**DEFENDANTS' JOINT REPLY TO PLAINTIFFS' COMBINED
RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

NOW COME the United States Federal Highway Administration ("FHWA"), Janice W. Brown in her official capacity as Division Administrator of FHWA, Texas Division, Jeffrey F. Paniati, P.E., in his official capacity as the Administrator of FHWA,[1] Ray LaHood, in his official capacity as Secretary of Transportation of the United States Department of Transportation, the Texas Transportation Commission, and Deirdre Delisi in her official capacity as Chair of the Texas Transportation Commission (collectively "Defendants") in the above-styled and captioned cause, by and through the undersigned counsel and file this Defendants' Joint Reply to Plaintiffs' Combined Response to Defendants' Motions for Summary Judgment.

## I. ARGUMENT

**A.    Plaintiffs' Motion for Summary Judgment includes extra-record materials that should not be considered in this Administrative Procedure Act proceeding.**

Defendants renew and incorporate in its entirety Defendants' Joint Motion to Strike (Dkt. No. 52), and Defendants continue to object to the consideration of the extra-record materials offered by Plaintiffs in Docket ("Dkt.") Nos. 50 through 50-3 in this Administrative Procedure Act ("APA") case. A reviewing court is to rely on the agency's record. *See Fla. Power & Light Co. v. Lorian*, 470 U.S. 729, 743-44, 105 S. Ct. 1598, 1607 (1985), *Camp v. Pitts*, 411 U.S. 138, 142, 93 S. Ct. 1241, 1244 (1973). Defendants also incorporate in their entirety Federal Defendants' Motion for Summary Judgment (Dkt. No. 49), State Defendants' Motion for Summary Judgment (Dkt. No. 46), and Defendants' Joint Response to Plaintiffs' Motion for Summary Judgment (Dkt. No. 56). Further, Defendants adopt and rely upon the Administrative Record ("Record"), including all

---

[1] The current Administrator of FHWA is Victor Mendez. Mr. Mendez assumed the role of Administrator on July 17, 2009.

1

supplements filed. Dkt. Nos. 25, 26, 53, and 58.

### B. Defendants' alternatives analysis complies with NEPA.

Plaintiffs continue to assert that Defendants did not conduct a "lawful" alternatives analysis. The Plaintiffs' brief calls for the court to look at FHWA's Record. Pl.'s Resp. Br. 5-6. Plaintiffs argue that the sections discussing alternatives show little analysis and that the process was conducted in a "conclusory fashion." Defendants urge the Court to review the complete Record on these topics, not just the three pages cited by Plaintiffs. Doc. No. 411, AR 009044, AR 009045 and AR 009394.[2]

To demonstrate a lawful alternatives analysis, Defendants need only show that they followed the NEPA process and took the hard look. *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 97, 103 S. Ct. 2246, 2252 (1983). Throughout the Record, and as detailed in their previous briefs, Defendants have shown that the alternatives analysis was in compliance with the requirements of NEPA. The identification of project alternatives was necessarily determined from the agency's examination, discussion and statement of the project's purpose and need. *See, e.g.*, Doc. No. 411 (Draft Environmental Impact Statement ("DEIS")), AR 009042-AR 009044 (Summary), AR 009087-AR 009117 (Vol. 1), AR 009380-AR 009391 (Vol. 2); Doc No. 624 (Final EIS ("FEIS")), AR 017858-AR 017860 (Summary), AR 017920-017937 (Vol. 1), and AR 018312-

---

[2] Interestingly, Plaintiffs' citation of the Record on this point directs the court's attention only to three pages—all from the DEIS. Further, two of the three pages, AR 009044 and AR 009045, are from the Summary section of the DEIS. Defendants assert that a review of the complete chapters on purpose and need and alternatives, from both the DEIS (Doc. No. 411, AR 009042-AR 009047, and AR 009061-AR 009062 (Summary), AR 009087-AR 009151 (Vol. 1), AR 009380-AR 009401, and AR 009556-AR 009558 (Vol. 2)) and FEIS (Doc. No. 624, AR 017858-AR 017866 (Summary), AR 017920-AR 017969 (Vol. 1), AR 018312-AR 018324 and AR 018544-AR 018553 (Vol. 2)), is necessary as well as a review of FHWA's final Record of Decision ("ROD") (Doc. No. 668, AR 023191-AR 023258) and Revised Record of Decision (Doc No. 706, AR -24855-AR 025009).

AR 018324 (Vol. 2).³ *See also Soda Mountain Wilderness Council v. Norton*, 424 F. Supp. 2d 1241, 1261 (E.D. Cal. 2006).

Based on the project's purpose and need, FHWA as the responsible Federal agency, then only needed to examine and discuss a reasonable "number" or "range" of the universe of alternatives for the project. *See, e.g.*, Doc. No. 411 (DEIS), AR 009044-AR 009047, and AR 009061-AR 009062, and AR 009556-AR 009558 (Vol. 2) (Summary), AR 009119-AR 009151 (Vol. 1), AR 009392-AR 009402; Doc. No. 624 (FEIS), AR 017860-AR 017866 (Summary), AR 017937-AR 017969 (Vol. 1), and AR 018325AR 018358, and AR 018544-AR 018553 (Vol. 2). *See also* Council on Environmental Quality, *Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations*, Question 1, Fed. Reg. 18026, 18027 (1981); *and* 40 C.F.R. § 1505.1(e), Defs.' Jt. Resp. (Dkt. No. 56-2) App. E.

In examining whether Defendants' actions meet the obligations imposed by NEPA for examining alternatives, most courts have adopted a rule of reason test. *La. Crawfish Producers Ass'n v. Rowan*, 463 F.3d 352 (5th Cir. 2006); *Sierra Club v. Espy*, 38 F.3d 792 (5th Cir. 1994); *Mid States Coal. for Progress v. Surface Transp. Bd.*, 345 F.3d 520 (8th Cir. 2003) (highway); *Laguna Greenbelt, Inc. v. U.S. Dep't of Transp.*, 42 F.3d 517 (9th Cir. 1994) (highway); *Concerned Citizens Coal. v. Fed. Highway Admin.*, 330 F. Supp. 2d 787 (W.D. La. 2004) (highway). As the full Record shows, FHWA, and all Defendants, have acted reasonably. The purpose and need statement and the resulting alternatives analysis and selection of the build alternative should be upheld as there is nothing arbitrary or capricious about Defendants' actions, including FHWA's approval of the project in the Record of Decision.

---

³To be clear, Volume 1 of each document was a comprehensive look at the potential Grand Parkway Segments in the northwest Harris County area (E, F-1, F-2 and G) while Volume 2 focuses solely on Segment E.

3

### C. The Final Environmental Impact Statement contains a fully compliant discussion of floodplains, drainage and wetlands.

Plaintiffs merely repeat the assertions they made in their Motion for Summary Judgment about Defendants' floodplains analysis, and those assertions have been answered by Defendants' Joint Response (Dkt No. 56). As explained in their Response, Defendants fully complied with all applicable laws and regulations in conducting their floodplain, drainage and wetlands analyses. Plaintiffs' complaints hinge on their argument that Defendants used outdated floodplain data, but as explained previously, that is simply not the case. The floodplain analysis was centered on the most current available floodplain data and drainage information.

#### 1. History of the drainage analyses.

Contrary to Plaintiffs' allegations, the drainage studies contained in the Record are indeed based on the most current and accurate scientific data. Given the large amount of data considered, and the variety of reports contained in the Record, it may be useful to summarize here the drainage analyses considered by Defendants in preparing the Segment E environmental documents. Below is a summary of those drainage analyses used in preparing the Segment E DEIS, Doc. No. 411, AR 009035-AR 009923; FEIS, Doc. No. 624, AR 017849-AR 020971; and the June 2009 Re-evaluation, Doc. No. 702, AR 023718-AR 023773:

- The February 2003 report titled *Initial Findings for the Drainage Analysis*, Doc. No. 412, AR 009924-AR 010024, was used in the preparation of the DEIS.

- The December 2004 report titled *Grand Parkway Segment E (SH 99) Drainage and Impact Analysis* ("*Drainage Analysis*"*)*, Doc. No. 603, AR 015765-AR 015862, was used in the preparation of the FEIS. Additionally, the Tropical Storm Allison Recovery Plan ("TSARP") boundaries were GIS overlaid (as viewed on aerial photographs) in the FEIS floodplain and drainage evaluation. The TSARP boundaries were not effective until the May 2008 drainage analysis. Defendants included in the Record the December 2004 *Drainage Analysis* cover page, but recently discovered that

4

the material included behind that cover was the 2003 version of the *Drainage Analysis*. The December 2004 *Drainage Analysis* is being added to the Record, the supplement of which is being filed contemporaneously with this Reply brief. *See* Dkt. No. 58. The December 2004 *Drainage Analysis* will appear as Doc. No. 751, AR 027142-AR 027347.

- In May 2008, the December 2004 *Drainage Analysis* was updated again. The May 2008 *Drainage Analysis*, Doc. No. 740, AR 026700-AR 026902, was used in preparing the June 2009 Re-evaluation and included the newly effective TSARP floodplain data.

- The May 2008 *Drainage Analysis* was again updated in February 2009. Doc. No. 743, AR 026908-AR 027107. The February 2009 *Drainage Analysis* was used in the preparation of the June 2009 Re-evaluation.

- The February 2009 *Drainage Analysis* was again updated in June 2009, and the June 2009 version of the *Drainage Analysis*, Doc. No. 703, AR 023774-AR 024849, was also analyzed in preparing the June 2009 Re-evaluation and included the Cypress Creek Physical Map Revision data (*see* Defs.' Jt. Resp. 11-12 (Dkt. No. 56).

Clearly, drainage analyses are constantly updated. As roadway design progresses, there is a possibility that impervious cover amounts, among other things, will change. Such impervious cover changes prompt the revision of drainage analyses to reflect the current roadway design. For this reason, drainage reports are not finalized until the Plans, Specifications and Estimates ("PS&E") phase is complete, and the PS&E phase occurs well after the environmental process concludes.[4] Similarly, several versions of a drainage report may vary only slightly from each other, but all may reasonably be considered in preparing NEPA documents.

### 2. Defendants properly applied the best available floodplain data.

For the FEIS and 2008 ROD, the best available data in this case was the 2006 Preliminary Flood Insurance Rate Map ("FIRM") that became effective June 18, 2007, showing the Cypress Creek floodplain and the subsequently released Flood Hazard Recovery Data for Cypress Creek.

---

[4]TxDOT's Project Development Process occurs generally in this order: (1) planning and programming; (2) preliminary design; (3) environmental; (4) right of way utilities; (5) PS&E development; (6) letting. *See* Defs.' Jt. Resp. (Dkt. No. 56-2) App. B: *TxDOT Project Development Process Manual*, Preface p. 11.

Punske Aff. ¶¶ 8, 9, Defs.' Jt. Resp. Exh. A (Dkt. No. 56-1); Doc. No. 624, AR 018516; and Doc. 691, AR 023513. The June 2009 Re-evaluation revisited the effective FEMA data and considered and analyzed the latest floodplain data. Punske Aff. ¶ 11, Defs.' Jt. Resp. Exh. A (Dkt. No. 56-1), Doc. 691, AR 023518. Defendants followed applicable laws and regulations in their consideration and application of that data. Punske Aff. ¶¶ 7, 9, Defs.' Jt. Resp. Exh. A (Dkt. No. 56-1), and Doc. 691, AR 023512-AR 023518. Plaintiffs re-urge their prior argument that Defendants ignored current data, but the Record in this case simply does not bear out that conclusion. The only support Plaintiffs offer for that assertion is their own brief and the affidavit of Larry Dunbar. Pl.'s Resp. 9 (Dkt. No. 57). Both of those sources should be rejected for obvious reasons, not the least of which is that NEPA does not allow a battle of the experts. *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378, 109 S. Ct. 1851, 1861 (1989); *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 1233, 1244 (9th Cir. 2005); *Hughes River Watershed Conservancy v. Johnson*, 165 F.3d 283, 289-90 (4th Cir. 1999).

As noted above, the data used by Defendants was the currently approved FIRM, and when new Flood Hazard Recovery Data was released by the District, Defendants analyzed and applied that data to the floodplain analysis. Punske Aff. ¶ 9, Defs.' Jt. Resp. Exh. A (Dkt. No. 56-1), Doc. No. 706 AR 024860, AR 024971, AR 024997-AR 025000. At no time did the Defendants in this case alter the data, as was done in the cases relied upon by Plaintiffs.[5] Moreover, Defendants were under no obligation to mention in the FEIS that FEMA floodplain maps were under review at the District because the fact that the District is reviewing the data does not mean that the data has been

---

[5]Plaintiffs cite the *Native Ecosystems* case and *North Carolina Alliance for Transportation Reform, Inc. v. United States Department of Transportation*, 151 F. Supp. 2d 661, 688 (M.D. N.C. 2001) for the proposition that purposeful inclusion of inaccurate data violates NEPA). In both cases, the courts held that defendants chose to include incorrect data to skew the environmental analyses. Such is not the case here.

impermissibly altered, as was true in *Native Ecosystems*, or that the data somehow falls short of being reliable.[6]

Floodplain data, like other types of technical data analyzed and applied in NEPA projects, is ever-changing. This is why it is necessary to use the effective data (data approved by FEMA), along with any newer data that is the best available at the time a decision is made (as was done here by the use of the approved FIRM and the use of the Flood Hazard Recovery Data for Cypress Creek that was approved in 2007). Doc. No. 624, AR 018516; Doc. No. 691, AR 023518; and Doc. No. 703, AR 023784. To this day, the Physical Map Revision for Cypress Creek remains pending with FEMA,[7] thus the best data available is to be used until the PMR is approved. Federal agencies often grapple with this phenomenon of ever-changing data, and they are not required to withhold decisions until perfect data is available.[8] If they were required to do so, they could never perform their decision-making duties in a timely manner.

---

[6]Plaintiffs cite two additional cases from the 2nd and 9th Circuits, purportedly for the premise that up-front disclosures of relevant data shortcomings must be made: *Lands Council v. Powell*, 395 F.3d 1019, 1032 (9th Cir. 2005), and *Sierra Club v. U.S. Army Corps of Eng'rs*, 701 F.2d 1011, 1030 (2nd Cir. 1983). Neither case adds anything to the other cases cited for the same proposition. *Lands Council* does find fault with failing to disclose a "model's consideration of relevant variables" which was incomplete, but the facts in the current case are not analogous. Here, there is no incomplete model or data. Rather, the floodplain data was the most current and up to date, with Defendants relying on the FEMA-approved effective data (the approved FIRM) and on the most recently released data (the Flood Hazard Recovery Data for Cypress Creek that was approved in 2007). Punske Aff. ¶ 9, Defs.' Jt. Resp. Exh. A (Dkt. No. 56-1), Doc. No. 706 AR 024860, AR 024971, AR 024997-025000; *see also* Doc. No. 691, AR 023518, Doc. No. 703, AR 023784.

[7]Court Advisory, in *Sierra Club v. Fed. Emergency Mgmt. Agency, et. al.*, Civil Action No. H-07-608 at 5; Defs.' Jt. Resp. App. G.

[8]*See generally Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 202 F. Supp. 2d 594, 632 (W.D. Tex. 2002) (citing *Nat'l Wildlife Fed'n v. Babbitt*, 128 F. Supp. 2d 1274, 1286 (E.D. Cal. 2000) (where available data is imperfect, Service is not obligated to supplement it or defer issuance of biological opinion until better information is available; Service must use best scientific and commercial data available regardless of sufficiency of that data); *see also City of Shoreacres v. Waterworth*, 332 F. Supp. 2d 992, 1019 (S.D. Tex. 2004) (citing *Kleppe v. Sierra Club*, 427 U.S. 390, 412, 96 S. Ct. 2718 (1976) (resolution of issues requiring a high level of technical expertise is properly left to the informed discretion of the responsible federal agencies)).

The June, 9, 2009 Revised Record of Decision ("ROD") concludes that the June 24, 2008 ROD remains valid, and that the Selected Alternative was the only practicable alternative. Doc. No. 706, AR 024864. This is because the floodplain boundaries of the watercourses traverse the entire study area, and because the Selected Alternative minimizes the floodplain encroachment. This scenario remains the same, even in light of the new information. Doc. No. 706, AR 024860-AR 024864. In other words, even if the PMR data were available at the time of the June 24, 2008 ROD, FHWA would have reached the same conclusion. Punske Aff. ¶ 15, Defs.' Jt. Resp. Exh. A (Dkt. No. 56-1). Consequently, there is no merit to Plaintiffs' assertion that the references to the latest floodplain data (PMR) in the Re-evaluation and revised ROD do not constitute a "hard look."

> **D.     Defendants have adequately considered and reported on the potential impacts due to air pollution and emissions of air toxics.**

Plaintiffs also continue to assert that Defendants have failed to meet the requirements of NEPA to consider the health effects on people due to air pollution and air toxics created by vehicles using the roadway. Plaintiffs' claim and arguments fail for the following reasons.

First, Defendants did consider the air quality issues and noted that air toxics and air pollution could "contribute to adverse human health effects and ecosystem degradation." *See* Doc. No. 624, AR 018375. The FEIS also noted that the main air pollutants emitted from motor vehicles are volatile organic compounds ("VOCs"), nitrogen oxides ("NOx"), carbon monoxide ("CO"), carbon dioxide ("$CO_2$"), particulate matter ("PM"), and a class of compounds called mobile source air toxics ("MSATs"). The standards employed by FHWA in examining the air issues are those created under the Clean Air Act ("CAA" or "Act").

While the requirements of the CAA are quite detailed, Section 109 of the CAA requires the Environmental Protection Agency ("EPA") to establish national ambient air quality standards

("NAAQS") for certain pollutants to protect public health and welfare. 42 U.S.C. § 7409. EPA sets NAAQS for some six criteria air pollutants to protect public health and the environment, with an adequate margin of safety. NAAQS exist for: CO, ozone ("$O_3$"), nitrogen dioxide ("$NO_2$"), sulfur dioxide ("$SO_2$"), PM for both 10 and 2.5 microns and less ("$PM_{10}$" and "$PM_{2.5}$"), and lead ("Pb"). Section 110(a)(1) requires each State to adopt and submit to EPA for approval a state implementation plan ("SIP") which provides for the implementation, maintenance and enforcement of the NAAQS in designated regions. 42 U.S.C. § 7410(a)(1). Pursuant to the CAA, EPA designates areas as "attainment" or "nonattainment," depending upon whether they meet the NAAQS for a particular pollutant, or "unclassifiable," if there is insufficient available information to classify an area. 42 U.S.C. § 7407(d).

Section 176(c)(1) of the CAA provides that no federal agency shall "engage in, support in any way or provide financial assistance for, license or permit, or approve, any activity which does not conform to [a SIP]." 42 U.S.C. § 7506(c)(1). This is the "general conformity" requirement. For transportation plans and projects, the Act imposes additional requirements for "transportation conformity." *Id.* § 7506(c)(2). For the FEIS and ROD, EPA had classified the Houston-Galveston area, which includes Harris County, as a moderate ozone non-attainment area. Doc. No. 514, AR 013063, Doc. No. 624, AR 017982. When the FEIS was approved, the Houston area exceeded the national ozone standard for about 40 days per year. The Houston area is in attainment for all other NAAQS. *See* Doc No. 624, AR 018375. Under the regulations, added capacity projects, such as the Grand Parkway, may advance to construction only if they are part of the Regional Transportation Plan ("RTP") and Transportation Improvement Plan ("TIP") that have been determined to conform

to the SIP by the Metropolitan Planning Organization and U.S. Department of Transportation.[9] The proposed project is currently included in the area's financially constrained 2035 RTP and FY 2008-2010 TIP) Doc. No. 620, AR 017458-AR 017838, and Doc. No. 661 AR 021470-AR 022070, adopted by Houston-Galveston Area Council ("H-GAC").  Doc. No. 445, AR 010433-AR 010506; Doc. No. 454, AR 010541-AR 010881; Doc. No. 507, AR 011576-AR 011604; Doc. No. 620, AR 017584-AR 017838; and Doc. No. 661, AR 021470-AR 022070.  In accordance with 40 C.F.R. Section 93.114, App. C, FHWA cannot not take final action on any environmental document until the proposed project is consistent with a currently conforming transportation plan and TIP.  However, this project was judged to be in conformity at the time of FHWA's ROD.  *See* Doc. No. 668, AR 023202-AR 023204.  Thus, Defendants are in compliance with EPA's requirements on air conformity as to the NAAQS.  Further modeling conducted in accordance with TxDOT's Air Quality Guidelines, Doc. No. 576, AR 015224-AR 015273, indicates that local concentrations of CO, one of the measurable NAAQS, are not expected to exceed national standards at any time along Segment E, and that local CO concentrations are not expected to exceed national standards should the four contiguous segments (E, F-1, F-2, and G) be built.  *See* Doc. No. 624, AR 018458.

As to MSATs, in a 2001 rulemaking EPA identified six priority items: acetaldehyde, acrolein, benzene, 1,3-butadiene, diesel exhaust (including diesel PM and organic gases), and formaldehyde (EPA, 2001a, 66 F.R. 17230), Doc. No. 624, AR 017985.  Besides being the lead federal agency for administering the CAA, EPA has the responsibility for issuing guidance on the health effects of MSATs.  EPA issued a final rule on controlling emissions of hazardous air pollutants from mobile sources (66 C.F.R. 17229, March 29, 2001), Doc. No. 289, AR 007743-AR 007788, Doc. No. 624,

---

[9]The Act requires EPA to "promulgate criteria and procedures for determining conformity." *Id.* § 7506(c)(4). These regulations are codified at 40 C.F.R. Part 51, Subpart W, App. A, and 40 C.F.R. Part 93 (§§ 93.150-93.160), Subpart B, App. B.

AR 017985. This rule was issued under the authority in Section 202 of the CAA. In an ongoing review of MSATs, EPA then finalized additional rules under authority of CAA Section 202(l) to further reduce MSAT s from mobile sources. *See* 72 F.R. 8427, February 26, 2007, Doc. No. 624, AR 017985. The air standards as to these pollutants, and exposure periods, have been determined by EPA. *See* Doc. No. 624, AR 018378. Based on EPA rules and guidance Defendants examined the potential levels of air toxics in the area. *See* Doc. No. 624, AR 018379-AR 018382. While the ability to discern differences in MSATs emissions among transportation alternatives is very difficult, with the implementation of EPA's new motor vehicle emission control standards, the FEIS notes that substantial decreases in MSATs emissions in this area will be realized from the base year (2000) through an estimated time of completion of Segment E. *See* Doc. No. 624, AR 018469. Neither MSATs nor the measurable NAAQS, with the exception of ozone, have been found to exceed levels of note as established by EPA relating to this project. *See* Doc. No. 624, AR 018473.

Plaintiffs seem to argue that something more is required. When Defendants have asserted that there exists no guidance, regulation or law requiring a health effects determination it should be understood to mean beyond that which EPA requires in measuring air quality and MSATs. Plaintiffs may argue about it, but there exists no EPA requirement that a transportation project, or any similar type project, actually detail the specific human health effects from a proposed project in a NEPA document.

Second, the case cited by Plaintiffs does not support its argument and actually supports the points made here. *See Border Power Plant Working Group v. Dep't of Energy*, 260 F. Supp. 2d 997, 1020 (S.D. Cal. 2003).[10] In the *Border Power Plant* case, the court was dealing with the construction of a large-scale electrical generation and transmission facility. The *Border Power Plant* plaintiff

---

[10]Plaintiffs cite the title as "*Borden*" but it actually is "*Border*."

argued that the Environmental Assessment ("EA") for the plant project failed to consider health effects due to increased air pollution from the plant. The defendants argued that they did in fact consider the impacts by determining and reporting the plant's emissions levels of NOx, CO, and $PM_{10}$ and comparing those to the levels established by EPA for those pollutants. *Id*. The court then found:

> Although plaintiff argues that an analysis of whether air impacts will exceed EPA SLs [significance levels] cannot be equated with the public health analysis required by NEPA, the Court finds that plaintiffs' argument is merely one involving methodology. The Court will not require that the agencies analyze the air impact on public health in a particular way, but rather will only ensure that the agencies' analysis is well-reasoned. The Court finds that the agencies have met their burden in this case.

*Id*.

This seems to be the exact argument advanced by Plaintiffs here. Plaintiffs want a specific estimate or determination on the impact on human health beyond that required in EPA's standard measuring and reporting of criteria pollutants—NAAQS and MSATs. Plaintiffs' argument essentially boils down to the assertion that agencies have had a long time to develop protocols, so by now they should have a model or tool to estimate the specific human health impacts. NEPA does not require this. On this topic it has been held that, "FHWA does not act arbitrarily and capriciously by relying on the prevailing NAAQS standard EPA has set." *Sierra Club v. U.S. Dep't of Transp.*, 310 F. Supp. 2d 1168, 1202 (D. Nev. 2004).

## II. CONCLUSION AND PRAYER

The Administrative Record in this case clearly demonstrates that Defendants considered all impacts of this project and made extraordinary efforts to involve the public and keep them informed. The agency examined all reasonable alternatives and their potential impacts. Because Defendants

in this case have not acted arbitrarily or capriciously in making their well-supported decision, and have taken the requisite "hard look," their decision should be affirmed.

WHEREFORE, based on the foregoing, Defendants respectfully pray that this Court deny Plaintiffs' Motion for Summary Judgment, grant Defendants' Motions for Summary Judgment, dismiss this action, and grant Defendants all other relief to which they may be justly entitled.

Respectfully submitted,

GREG ABBOTT
ATTORNEY GENERAL OF TEXAS

C. ANDREW WEBER
FIRST ASSISTANT ATTORNEY GENERAL

DAVID S. MORALES
DEPUTY ATTORNEY GENERAL FOR
CIVIL LITIGATION
KRISTINA W. SILCOCKS
ASSISTANT ATTORNEY GENERAL
CHIEF, TRANSPORTATION DIVISION


_____s/Lisa Marie McClain_____
LISA MARIE MCCLAIN
ASSISTANT ATTORNEY GENERAL
Attorney-in-Charge
State Bar No. 90001724
Federal ID No 572948
STEPHEN L. TATUM, JR.
State Bar No. 24070721
Transportation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 463-2004/Fax: (512) 472-3855

ATTORNEYS FOR STATE DEFENDANTS, TEXAS TRANSPORTATION COMMISSION AND DEIRDRE DELISI, IN HER OFFICIAL CAPACITY AS CHAIR OF THE TEXAS TRANSPORTATION COMMISSION

OF COUNSEL:

KENNETH RAMIREZ
State Bar No. 16502200
Brown McCarroll LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701-4093
Phone: (512) 472-5456/Fax: (512) 479-1101

**For Federal Defendants:**

TIM JOHNSON
Acting United States Attorney

By:
_____s/ Jack F. Gilbert_____
JACK F. GILBERT
Special Assistant United States Attorney
Attorney-In-Charge for Federal Defendants
Texas Bar No. 00786946
60 Forsyth St., SW Suite 8M5
Atlanta, Georgia 30303-8814
Phone: (404) 562-3924/Fax: (404) 562-3702

LINDA J. AMIDON
Special Assistant United States Attorney
Florida Bar No. 0346871
60 Forsyth St., SW Suite 8M5
Atlanta, Georgia 30303-8814
Phone: (404) 562-3670/Fax: (404) 562-3702

ATTORNEYS FOR FEDERAL DEFENDANTS, UNITED STATES FEDERAL HIGHWAY ADMINISTRATION; JANICE W. BROWN, IN HER OFFICIAL CAPACITY AS DIVISION ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION, TEXAS DIVISION; JEFFREY F. PANIATI, P.E., IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION; UNITED STATES DEPARTMENT OF TRANSPORTATION; RAY LaHOOD, IN HIS OFFICIAL CAPACITY AS SECRETARY OF TRANSPORTATION OF THE UNITED STATES DEPARTMENT OF TRANSPORTATION

OF COUNSEL:

KEITH EDWARD WYATT
Assistant United States Attorney
Texas Bar No. 22092900
Federal Bar No. 3480
P.O. Box 61129
Houston, Texas 77208
Phone: (713) 567-9713 / Fax: (713) 718-3303

## **CERTIFICATE OF SERVICE**

      I certify that on the 1st day of March 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following: Marisa Perales, LOWERRE, FREDERICK, PERALES, ALLMON & ROCKWELL, 707 Rio Grande, Ste. 200, Austin, TX 78701; Brad Rockwell, LOWERRE, FREDERICK, PERALES, ALLMON & ROCKWELL, 707 Rio Grande, Ste. 200, Austin, TX 78701; Jack F. Gilbert, Office of Chief Counsel, Federal Highway Administration, 60 Forsyth St. SW Suite 8M5, Atlanta, GA 30303-8814.

                                                            _____s/Lisa Marie McClain_____
                                                            LISA MARIE MCCLAIN
                                                            ASSISTANT ATTORNEY GENERAL